UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

VERA IFUDU,

                    Plaintiff,

          v.

CITY OF NEW YORK, POLICE OFFICERS
KEVIN PUGLIESE, CHASIDY GENAO, ZHAN
REN, and SGT NATHAN MOLE,

                    Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
16-CV-2957 (MKB)

MARGO K. BRODIE, United States District Judge:

　　Plaintiff Vera Ifudu commenced the above-captioned action on June 8, 2016, against

Defendants City of New York (the "City") and Police Officers John Doe 1-4.  (Compl., Docket

Entry No. 1.)  Plaintiff filed an Amended Complaint on January 5, 2017, substituting Defendants

Police Officers Kevin Pugliese, Chasidy Genao, Zhan Ren, and Sergeant Nathan Mole for Police

Officers John Doe 1-4.  (Am. Compl., Docket Entry No. 13.)  Plaintiff's claims arise from her

arrest on July 31, 2015.  (*Id*.)  Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for false

arrest, use of excessive force, and failure to intervene.  (*Id*. ¶¶ 35–43.)  Plaintiff also asserts state

law claims for assault and battery, negligent and intentional infliction of emotional distress, and

invasion of privacy.[1]  (*Id*. ¶¶ 44–64.)  Defendants move for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure.  (Defs. Mot. for Summ. J. ("Defs. Mot."), Docket

Entry No. 36; Def. Mem. in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 39.)  For the

---

[1]  In her Opposition to Defendants' Motion for Summary Judgment, Plaintiff withdrew
her municipal liability, abuse of process, and negligent assault and battery claims.  (Pl. Mem. in
Opp'n to Defs. Mot. for Summ. J. ("Pl. Opp'n") 3 n.1, Docket Entry No. 42.)

reasons discussed below, the Court grants the motion in part and denies it in part.

## I. Background

The following facts are undisputed unless otherwise noted. Plaintiff rented the basement of her property, located at 145-10 106th Avenue, Jamaica, New York (the "Property"), to Evans Otoba beginning in September of 2014.[2] (Defs. Reply to Pl. Counter-Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs. Reply to Pl. 56.1") ¶ 3, Docket Entry No. 41; Dep. of Vera Ifudu ("Pl. Dep.") 93:17, annexed to Decl. of Valerie Smith ("Smith Decl.") as Ex. C, Docket Entry No. 38-3.) On July 29, 2015, Otoba informed Plaintiff that someone had burglarized the basement damaging the door to the basement. (Pl. Dep. 42:22–25, 87:19–25, 111:10.) That same day, Plaintiff instructed Otoba to evacuate the basement with his belongings. (Defs. Reply to Pl. 56.1 ¶ 6.)

On July 30, 2015, Otoba called the police multiple times to report Plaintiff's attempts to remove him from the basement. (*Id.* ¶ 9.) The police informed Otoba that Plaintiff could not force him to move if he did not want to move out of the basement. (*Id.* ¶ 30.) The following day, Plaintiff and Otoba continued to argue over the use of the basement. (*Id.* ¶¶ 18–19.) At approximately 9:40 PM, Officers Genao and Ren responded to reports of an illegal eviction at the Property. (*Id.* ¶ 21.) Plaintiff informed the officers that "it was not working out with Mr. Otoba and that he need[ed] to leave the basement." (*Id.* ¶ 23.) The officers left after informing

---

[2] Although Plaintiff maintains that Otoba's lease was for storage, not residency, (Pl. Opp'n 8), it appears that Otoba was living in the basement, (CCRB Official Statements 2, annexed to Hoffner Decl. as Ex. 4, Docket Entry No. 43-4 ("Both the tenant and the landlord acknowledged that the tenant had been living at the location for over [thirty] days."); Dep. of Vera Ifudu ("Pl. Dep.") 102:2–8, 106:21–24, annexed to Decl. of Valeria Smith ("Smith Decl.") as Ex. C, Docket Entry No. 38-3; Pl. Opp'n 8 ("Otoba was not even supposed to be living there"); Decl. of Zhan Ren ("Ren Decl."), annexed as Ex. I to Decl. of Valerie Smith, Docket Entry No. 38-9 ("[Ren] spoke with the tenant who informed [him] that he had been living at the location for over 30 days, and that he was paying his rent")).

Plaintiff that she could not evict Otoba without first going to housing court. (*Id*. ¶¶ 26–29.) The situation was not resolved to Plaintiff's satisfaction because the police did not order Otoba to vacate the basement. (*Id*. ¶ 26.)

At approximately 11 PM, emergency medical technicians ("EMT") arrived the Property in response to Plaintiff's 911 call requesting an ambulance because "she was feeling 'put upon,' her heart was palpitating and she had not taken her blood pressure medication in [forty-eight] hours." (*Id*. ¶¶ 30–31, 34.) Shortly thereafter, Otoba again called 911, complaining that Plaintiff was harassing him and would not leave the Property. (*Id*. ¶ 35.) At approximately 11:30 PM, Officers Mole and Pugliese arrived at the Property. (*Id*. ¶ 36.) Soon after Mole and Pugliese arrived, Genao and Ren returned to the Property in response to a report of an illegal eviction. (*Id*. ¶ 41.) Otoba showed the officers his lease for the basement confirming that he was the tenant.[3] (*Id*. ¶ 43.) During this period, Plaintiff "did not understand what was going on" and was "super confused." (*Id*. ¶¶ 50–52, 54–56.) Despite repeated requests from EMT and the officers, Plaintiff refused to go to the hospital. (*Id*. ¶ 40.)

At one point after all four Defendants arrived, Otoba went into the basement, and Plaintiff ran after him. (*Id*. ¶ 62.) Otoba tried to close the door to keep Plaintiff from entering and Plaintiff physically blocked the doorframe with her body. (*Id*. ¶ 64.) The resulting struggle over the door caused it to crack and break. (*Id*. ¶ 65.) Plaintiff concedes that the situation between her and Otoba was "volatile." (*Id*. ¶ 66.) Police officers followed Plaintiff into the room, threw Plaintiff to the ground, and placed her in handcuffs. (*Id*. ¶ 72; Pl. Dep. 140:16–21.)

---

[3] Neither party has provided the Court with a copy of this lease. Plaintiff maintains that she no longer has a copy. (Pl. Letter dated Sept. 11, 2018, Docket Entry No. 50.) Defendants assert that, despite their request during discovery, Plaintiff never produced the original or a copy of the lease. (Defs. Letter dated Sept. 12, 2018, Docket Entry No. 51.)

While Plaintiff was on the ground, Mole put his boot on the nape of her neck "for a split second." (Defs. Reply to Pl. 56.1 ¶ 71.)

The officers picked Plaintiff up off the ground and carried her outside while she yelled "so loudly that she lost her voice." (*Id*. ¶¶ 73–74.) Once outside, the officers placed Plaintiff back onto the ground. (*Id*. ¶ 78.) At this time, Plaintiff still had her bag, which was hanging across her body. (*Id*. ¶ 77.) Plaintiff alleges that an officer removed the handcuffs and both Mole and Pugliese attempted to take the bag from Plaintiff. (*Id*. ¶¶ 79–80; Pl. Suppl. Decl. ¶ 8, Docket Entry No. 43-3.)[4] Plaintiff fought the officers to keep her bag by holding it close to her body. (Defs. Reply to Pl. 56.1 ¶ 81.) During the struggle, a ring on the bag cut Plaintiff's finger, causing her to bleed. (*Id*. ¶¶ 82, 84.)

Defendants re-handcuffed Plaintiff and escorted her by ambulance to Jamaica Hospital. (*Id*. ¶¶ 86, 93.) At the hospital, Plaintiff received six stitches for the cut to her finger. (*Id*. ¶ 99; Medical Record 3, annexed as Ex. J to Smith Decl.) Plaintiff did not suffer any nerve damage to her injured finger and reported no problems using her finger or hand after the stitches were removed. (*Id*. ¶¶ 100, 103.) Other than the cut to her finger, Plaintiff suffered only minor pain or bruising as a result of her encounter with the NYPD. (*Id*. ¶ 85.) Plaintiff alleges that the NYPD refused to return her bag to her, despite repeated requests. (Pl. Dep. 153.)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant

---

[4] Defendants contend that Plaintiff's supplemental affidavit should be stricken. (Defs. Reply Mem. in Supp. Mot. to Dismiss ("Defs. Reply") 2–3, Docket Entry No. 40.) The Court addresses this request below.

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Plaintiff's supplemental affidavit and rule 56.1 counter-statement of undisputed facts

Defendants argue that the Court should disregard Plaintiff's supplemental affidavit, submitted with her opposition to Defendants' motion, because it does not appear to be based on personal knowledge and contradicts Plaintiff's prior testimony. (*See* Defs. Reply Mem. in Supp. of Defs. Mot. ("Defs. Reply") 2–3, Docket Entry No. 40.) Defendants further request that the Court disregard certain responses in Plaintiff's Counter-Statement of Material Facts Pursuant to Local Rule 56.1, which rely on Plaintiff's supplemental affidavit or which are otherwise nonresponsive, narrative, or unsupported by the record. (Defs. Reply 1–2; Defs. Reply to Pl. 56.1.)

### i. Plaintiff's supplemental affidavit

"[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgement motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Crawford v. Franklin Credit Mgmt.*, 758 F.3d 473, 482 (2d Cir. 2014) (quoting *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996)). While a court may not ordinarily make credibility determinations at the motion to dismiss stage, a court will not consider "sham evidence" submitted in order to create a genuine issue of material fact in opposition to a motion for summary judgment. *Simcoe v. Gray*, 577 F. App'x 38, 40–41 (2d Cir. 2014); *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 195 (2d Cir. 2013). However, a court may disregard such "sham evidence" only "in the rare circumstance where the plaintiff relies almost exclusively on [her] own testimony, much of which is contradictory and incomplete," such that "it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Simcoe*, 577 F. App'x at 40–41 (citing *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)). Courts should not "engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (citing *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011)); *see also Matheson v. Kitchen*, 515 F. App'x 21, 24 (2d Cir. 2013) (holding that the district court erred when it excluded testimony because "[w]hile some of the inconsistencies identified by the court below might well lead a jury to reject the credibility of [the] testimony, they do not place this case among the 'extraordinary cases, where the facts alleged are so contradictory that doubt is cast upon their plausibility'").

The timing of the testimony is a relevant factor in deciding whether to assess the credibility of a witness' account on a motion for summary judgment. *See In re Fosamax Prods. Liab. Litig.*, 707 F.3d at 195 ("The timing of the testimony recanting the prior sworn testimony clearly increased the likelihood that it was intended solely to defeat the motion for summary judgment." (citations omitted)).

There are minor deviations between Plaintiff's deposition testimony and her affidavits. During Plaintiff's deposition, she was unable to identify the officers involved in her arrest by name but referred to one of the officers as the commander or the "CO." (Pl. Dep. 119:13, 140:16-21, 141:2-12.) Plaintiff testified that, after her initial detention, one officer removed the handcuffs and one officer "took the bag off" of her.[5] (Pl. Dep. 151:5–8.) However, at other points in her deposition, Plaintiff repeatedly referred to the existence of multiple officers who removed her bag.[6] (*See generally* Pl. Dep. 150:22–151:22.) In Plaintiff's supplemental affidavit, Plaintiff identifies Mole as the commanding officer who, along with Pugliese, "forcibly tried to pull [her] bag from [her] grasp." (Pl. Supplemental Decl. ¶ 8, annexed to Decl. of Steven Hoffner ("Hoffner Decl.") as Ex. 3, Docket Entry No. 43-3.)

While there are minor contradictions between Plaintiff's deposition testimony and her supplemental affidavit, this is not one of those "extraordinary cases, where the facts alleged are so contradictory that doubt is cast upon their plausibility." *Matheson*, 515 F. App'x at 24. Moreover, the record contains other evidence giving rise to a genuine dispute of material fact,

---

[5] It is unclear whether Plaintiff is referring to one officer who performed both tasks or multiple officers.

[6] *See, e.g.*, Pl. Dep. 151:9–13 ("The only thing they said after they took it, 'where you're going, you won't need the bag."); 151:17–18 ("I was only uncuffed for the purpose of them taking the bag."); 152:14 (referring to length of struggle over the bag, Plaintiff explains it lasted "long enough for them to lacerate my finger").

and the Court is therefore not required to "rely almost exclusively" on Plaintiff's testimony. *Simcoe*, 577 F. App'x at 40–41. As Plaintiff notes in her supplemental affidavit, her testimony is based on NYPD Civilian Complaint Review Board ("CCRB") documents. (Pl. Suppl. Decl. ¶ 1.) These CCRB documents include interviews with each of the Defendants regarding their respective roles in Plaintiff's arrest. (*See* CCRB Official Statements, annexed to Hoffner Decl. as Ex. 4, Docket Entry No. 43-4.) In addition, with the exception of Pugliese, all Defendants have submitted declarations in this case regarding their respective roles in Plaintiff's arrest. (*See* Decl. of Chasidy Genao, annexed Smith Decl as Ex. E to; Decl. of Nathan Mole, annexed to Smith Decl. as Ex. H; Decl. of Zhan Ren, annexed as Ex. I to Smith Decl.) Plaintiff is entitled to rely on information obtained through discovery to identify the officers who participated in her arrest by name. *See Cruz v. City of New York*, 232 F. Supp. 3d 438, 449 (S.D.N.Y. 2017) ("Courts typically resist dismissing suits against John Doe defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials.") Accordingly, the Court will consider Plaintiff's supplemental affidavit and credit those contested statements in Plaintiff's Counter-Statement to Defendants' Rule 56.1 Statement of Undisputed Facts that rely on the contents of the supplemental affidavit.

The Court therefore declines to disregard Plaintiff's supplemental affidavit for purposes of deciding Defendants' motion.

### ii. Plaintiff's Rule 56.1 counter-statement of undisputed facts

Defendants also urge the Court to disregard Plaintiff's Rule 56.1 responses where she provides an unresponsive, inaccurate citation, or no citation, to the record. (Defs. Reply 1.)

The Court deems admitted those statements that Plaintiff disputes without support in the record. (*See, e.g.*, Defs. Reply to Pl. 56.1 ¶¶ 9, 20, 25, 45, 48, 59, 88, 91.) The Court will also

disregard responses containing legal argument or nonresponsive narrative. *See Goldstick v. Hartford, Inc.*, No. 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002). However, the Court will not disregard factual disputes supported by evidence in the record simply because Plaintiff failed to provide accurate citations. *Sloane v. Getz*, 150 F. App'x 86, 88 (2d Cir. 2005) (finding courts must consider issues of material fact in the record even where a party fails to raise them (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). Defendants note that "instead of responding to each of Defendants' statements and providing a counterstatement" as required by Rule 56.1, "many of Plaintiff's responses include inappropriate counterstatements." (Defs. Reply 2.) While the Court will not consider these nonresponsive statements for the purposes of determining whether *Defendants'* statements are admitted or denied, the Court will consider the facts referenced, where supported by the record, for the purposes of determining whether a *separate* factual dispute exists.

### c. Section 1983 claims

Plaintiff asserts section 1983 claims against Defendants for false arrest, use of excessive force, and failure to intervene. (Am. Compl. ¶¶ 35–43.)

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted).

### i. False arrest

Defendants argue that Plaintiff's false arrest claim fails because the officers had probable cause to arrest Plaintiff for unlawful eviction in violation of New York City Administrative Code § 26-521 ("section 26-521"), trespass in violation of New York Penal Law § 140.15, or to seize Plaintiff as a threat to herself or others pursuant to New York Mental Health and Hygiene Law § 9.41. (Defs. Mem. 5–11; Defs. Reply 3–5.)

Plaintiff contends that the officers lacked probable cause to arrest her because she was attempting to secure the basement, not unlawfully evict Otoba, (Pl. Mem. in Opp'n to Defs. Mot. ("Pl. Opp'n") 8, Docket Entry No. 42), could not have trespassed on her own property, (*id.*), and because her seizure was not medically necessary, (*id.* at 5–7).

In addressing a section 1983 claim for false arrest, courts look to "the law of the state in which the arrest occurred" to determine if the officers had probable cause to arrest the plaintiff for a violation of state law. *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19–21 (2d Cir. 2012) (analyzing whether the plaintiff's actions gave a police officer probable cause to arrest the plaintiff for violating state law). To establish a section 1983 claim for false arrest under New York law, the plaintiff must adduce evidence that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Berg v. Kelly*, 897 F.3d 99, 106 (2d Cir. 2018) (citing *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003)). "A [section] 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013).

The Fourth Amendment protects individuals from unreasonable searches and seizures by

law enforcement officials. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). A law enforcement

official violates the Fourth Amendment's protections if he or she arrests someone without

probable cause. *Id.* Conversely, "probable cause is an absolute defense to a false arrest claim."

*Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. &

N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)). "A police officer has probable cause for an arrest when

he has 'knowledge or reasonably trustworthy information of facts and circumstances that are

sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has

committed or is committing a crime . . . .'" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013)

(quoting *Weyant*, 101 F.3d at 852); *see also Gonzalez*, 728 F.3d at 155. In addition, police

officers have probable cause to arrest when they personally observe a person commit a crime in

their presence. *See Ackerson*, 702 F.3d at 20; *United States v. Scopo*, 19 F.3d 777, 781–82 (2d

Cir. 1994). The reviewing court "must consider [only] those facts available to the officer at the

time of the arrest and immediately before it." *Stansbury*, 721 F.3d at 89 (alteration in original)

(quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Probable cause need not be

"predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely

related' to the offense invoked by the arresting officer." *Jaegly*, 439 F.3d at 153 (quoting

*Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). A "plaintiff is not entitled to damages under

[section] 1983 for false arrest so long as the arrest itself was supported by probable cause,

regardless of whether probable cause supported any individual charge identified by the arresting

officer at the time of arrest." *Id.* at 154. The question is whether the facts known to the arresting

officer, at the time of the arrest, objectively support a finding of probable cause to support the

arrest. *Gonzalez*, 728 F.3d at 155.

### 1. Probable cause for unlawful eviction

Defendants argue that they had probable cause to arrest Plaintiff for unlawful eviction in

violation of New York City Administrative Code § 26-521. (Defs. Mem. 11–12.)

Plaintiff disputes that she was attempting to unlawfully evict her tenant, claiming that Otoba had no right to the basement because his lease was for storage and that she was only attempting to repair recent damage to the door. (Pl. Opp'n 8.)

Section 26-521 provides that it is unlawful to evict or attempt to evict a tenant without a warrant or court order as follows:

> It shall be unlawful for any person to evict or attempt to evict an occupant of a dwelling unit who has lawfully occupied the dwelling unit for thirty consecutive days or longer or who has entered into a lease with respect to such dwelling unit . . . by engaging in a course of conduct which interferes with or is intended to interfere with or disturb the comfort, repose, peace or quiet of such occupant in the use or occupancy of the dwelling unit, to induce the occupant to vacate the dwelling unit including, but not limited to, the interruption or discontinuance of essential services.

N.Y.C. Admin. Code § 26-521.

Defendants had probable cause to believe Plaintiff was attempting to unlawfully evict Otoba in violation of section 26-521 based on Otoba's repeated reports to the police that Plaintiff was attempting to unlawfully evict him, combined with Defendants' own observations of Plaintiff's attempts to prevent Otoba from accessing the basement. Defendants responded to Otoba's repeated reports to the police that Plaintiff was attempting to evict him from the basement he was renting at 145-10 106th Avenue. (Defs. Reply to Pl. 56.1 ¶¶ 21, 35, 44.) Otoba showed the officers his lease to rent the basement, which confirmed that "Otoba was the tenant." (*Id*. ¶¶ 43, 44.) Otoba also informed the police that he had been paying rent and living in the basement for more than thirty days. (*See* CCRB Official Statements 2; Decl. of Zhan Ren 1.) Otoba's reports alone supplied the officers with probable cause to arrest Plaintiff. *See Powell v. Murphy*, 972 F. Supp. 2d 335, 342 (E.D.N.Y. Sept. 3, 2013) ("[W]hen an arresting officer has been advised of a crime by a person who claims to be the victim and who it seems reasonable to

believe is telling the truth, he typically has probable cause to effectuate an arrest.")

In addition to the reports, Defendants also witnessed Plaintiff "disturb the comfort, repose, peace or quiet" of Otoba with the intent to "induce [him] to vacate" the basement. *See* N.Y.C. Admin. Code § 26-521. On the night of Plaintiff's arrest, she informed the officers that Otoba could not stay at the location and sought their assistance in forcing him to vacate the basement. (Defs. Reply to Pl. 56.1 ¶¶ 23, 26.) Otoba showed the officers his lease to rent the basement, which confirmed that "Otoba was the tenant." (*Id*. ¶¶ 43, 44.) Defendants attempted to resolve the dispute by referring Plaintiff to landlord-tenant court and explaining to her that she could not evict Otoba at that time. (*Id*. ¶ 27.) Moreover, Defendants witnessed Plaintiff attempt to physically prevent Otoba from entering the basement. (*Id*. ¶¶ 64–65.)

Plaintiff argues that Defendants did not have probable cause for unlawful eviction because Otoba's lease was for storage only, not residency. (Pl. Opp'n 8.) Although unclear, Plaintiff appears to argue that she could not have violated section 26-521 because it only protects occupants of a *dwelling* unit. New York law draws a distinction between the rights of mere licensees and those of a residential tenant with a possessory interest.[7] *See Gladsky v. Sessa*, No. 6-CV-3134, 2007 WL 2769494, at *8 (E.D.N.Y. Sept. 21, 2007) (discussing the difference between possessory interest pursuant to section 26-521 and interest of licensee to specific use of the property); *Shearin v. Back on Track Grp., Inc.*, 997 N.Y.S.2d 227, 232 (Civ. Ct. 2014) (same). Plaintiff does not assert in either her opposition or her affidavits that Defendants were aware that Otoba's lease was for storage when they arrested her. (*See* Pl. Opp'n.) However, during her

---

[7] Under New York law, owners have a right to self-help in removing a licensee from a property. *Morrison v. City of Hudson*, No. 14-CV-1409, 2017 WL 4357456, at *8 (N.D.N.Y. Sept. 29, 2017).

deposition, Plaintiff stated that she communicated to two of the four Defendants that "[Otoba] has this place for storage." (Pl. Dep. 121:25.)

Even if Plaintiff informed Defendants that Otoba's lease was for storage, this alone did not negate probable cause to arrest her for unlawful eviction given Otaba's statement to the police that he had been living in the basement and paying rent for more than thirty days and the fact that he showed the officers the lease. *See Jocks*, 316 F.3d at 135–36 ("We do not impose a duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest.") Plaintiff agrees that the lease caused the officers to believe "Otoba was the tenant" and has provided no evidence that the lease contained information which would have negated the officers' belief that Otoba had a possessory interest in the basement. (*Id*. ¶¶ 43, 44.) The police were further informed that Otoba was living in the basement, a fact which Plaintiff does not deny. (*See* CCRB Official Statements 2 ("Both the tenant and the landlord acknowledged that the tenant had been living at the location for over [thirty] days."); Decl. of Zhan Ren, annexed to Smith Decl as Ex. I ("[Ren] spoke with the tenant who informed [him] that he had been living at the location for over [thirty] days, and that he was paying his rent")); Pl. Dep. 102:2–8, 106:21–24; Pl. Opp'n 8 ("Otoba was not even supposed to be living there").) As a result, even if Plaintiff informed Defendants that Otoba did not have a residential interest in the basement, Defendants were not required to credit Plaintiff's exculpatory statement against the multiple reports from the alleged victim and their own observations on the scene in determining probable cause. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in

relying on that information.").

Plaintiff also argues that Defendants lacked probable cause because she was attempting to repair the door to the basement. (Pl. Opp'n 8.) However, Plaintiff appears to have replaced the broken door by the time of her arrest, (Pl. Dep 137:3-4; Defs. Reply to Pl. 56.1 ¶¶ 64, 65), and fails to present any evidence that she informed the police that the premises remained unsafe or otherwise unfit for Otoba's continued use. Instead, Plaintiff admits that she told Genao and Ren "that it was not working out with Mr. Otoba and that he needed to leave the basement apartment." (Defs. Reply to Pl. 56.1 ¶ 23.) Accordingly, the Court finds that Defendants had reasonably trustworthy information of facts and circumstances sufficient to warrant a person of reasonable caution to believe Plaintiff was committing unlawful eviction and grants the motion as to Plaintiff's false arrest claim.

## 2. Qualified Immunity

Defendants argue, in the alternative, that they are entitled to qualified immunity because there was at least arguable probable cause to arrest Plaintiff for unlawful eviction. (Defs. Mem. 12–13.)

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014). As to whether the right is clearly established, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 92 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). "[T]he relevant question is whether a reasonable officer

could have believed [his or her conduct] to be lawful, in light of clearly established law and the information [he or she] possessed." *Id.* at 115 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Defendants bear the burden of proof to establish that qualified immunity exists. *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012); *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011). In determining whether an officer is entitled to qualified immunity, the facts must be "taken in the light most favorable to the party asserting the injury." *Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir. 2002). Because "[i]t is firmly established that . . . claims of arrest . . . without probable cause implicate constitutional rights, [ ] the dispositive issue for purposes of . . . qualified immunity is whether based on the facts as alleged by [the plaintiff], [the officer's] actions were based on probable cause." *Id*. at 1281 (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

"In the context of a false arrest claim, qualified immunity protects an officer if he had arguable probable cause to arrest the plaintiff." *Myers v. Patterson*, 819 F.3d 625, 632–33 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Garcia*, 779 F.3d at 92). "Arguable probable cause exists if [ ] it was objectively reasonable for the officer to believe that probable cause existed or [ ] officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 633 (internal quotation marks omitted) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). "[A]n officer lacks arguable probable cause and is not entitled to qualified immunity only where no officer of reasonable competence could have made the same choice in similar circumstances." *Id.* (internal quotation marks omitted) (quoting *Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir. 1995)).

Even if Defendants did not have probable cause to arrest Plaintiff for unlawful eviction, it was "objectively reasonable" for Defendants to believe that probable cause existed. Officers of

reasonable competence could have believed that Plaintiff was unlawfully evicting Otoba when, after being informed that Otoba had been living in the basement and had a lease, they witnessed Plaintiff physically prevent him from accessing the basement.

### ii. Excessive force

Plaintiff argues that, even if Defendants were justified in seizing Plaintiff, the manner in which they did so was unreasonable and resulted in unnecessary injury to her finger.[8] (Pl. Opp'n 11–12.)

Defendants argue that they used reasonable force to remove Plaintiff's bag, which was necessary to overcome Plaintiff's resistance to their lawful actions.[9] (Defs. Mem. 16.)

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer" in the course of an arrest. *Tracy v. Freshwater*, 623 F.3d. 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Because the Fourth Amendment's test of reasonableness is one of "objective reasonableness," the inquiry is fact-specific and requires a balancing of various factors. *Id*. When determining whether an officer used excessive force, a court must analyze the totality of the circumstances facing the officer and consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an

---

[8] Plaintiff also alleges that Defendants threw her to the ground, (Defs. Reply to Pl. 56.1 ¶¶ 68–69), placed a boot on the nape of her neck, (*id*. ¶ 71), and carried her out of the basement to the ambulance, (*id*. ¶ 73). However, Plaintiff does not specifically allege injuries resulting from these acts. (*See* Pl. Opp'n 11–12.)

[9] Defendants argue that Plaintiff has failed to allege that any Defendant had personal involvement in the alleged excessive force because the Amended Complaint refers only to an unidentified officer as the individual responsible for her injury. (Pl. Opp'n 21; Am. Compl. ¶ 17.) While Plaintiff is required to allege Defendants' personal involvement, *see Warheit v. City of New York*, 271 F. App'x 123, 126 (2d Cir. 2008), the Court finds she does so in her supplemental affidavit, which identifies both Mole and Pugliese as the officers that she struggled with over her bag, (Pl. Supplemental Decl. ¶ 8).

immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id*. (citations omitted); *see also Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 463 (E.D.N.Y. 2010) ("[T]he fact finder must consider the totality of the circumstances, including 'the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest.'" (citations omitted)). However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 397). Courts must "evaluate the record from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Id*. (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396). Moreover, it has long been "recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396); *see also Tracy,* 623 F.3d at 98 ("Given that [the plaintiff] was clearly resisting arrest at that point, it was not unreasonable for [the officer] to respond by diving on top of [the plaintiff] and pinning him down so that he could not get back up and continue to flee.")

A reasonable juror could find that Defendants' use of force to remove Plaintiff's bag was excessive under the circumstances. During Plaintiff's struggle with the officers over her bag, Plaintiff's finger caught on a ring on the bag, which inflicted a cut sufficiently deep to require stitches.[10] (Defs. Reply to Pl. 56.1 ¶¶ 80–82, 99.) Neither of the crimes underlying Defendants' probable cause defense — trespass and unlawful eviction — are particularly severe nor contain

---

[10] Other than the cut to her finger, Plaintiff claims only minor pains and bruising resulting from Defendants' use of force. (Defs. Reply to Pl. 56.1 ¶ 85.)

any element of violence.[11] *See Tracy*, 623 F.3d. at 96; *see also Sullivan v. Gagnier*, 225 F.3d

161, 165 (2d Cir. 2000) (noting in analysis of excessive force claim that none of the crimes the

plaintiff was ultimately charged with contained violence as essential elements). As a result, there

is no indication that Defendants would be required to use force to arrest based on the nature of

these crimes alone. Nor do Defendants claim that they were required to use force because

Plaintiff posed "an immediate threat to the safety of the officer[s] or others." *Id*. In fact,

Plaintiff was detained and in handcuffs at the time Defendants decided to remove her bag. (Defs.

Reply to Pl. 56.1 ¶¶ 79–80.) Though Plaintiff admits to actively resisting the officers' attempts

to take her bag, this alone does not render the force used reasonable.[12] *Sullivan*, 225 F.3d at 166.

Whether the force used by Mole and Pugliese was "reasonably related to the nature of the

resistance," is a factual dispute best reserved for the jury. *Id*. Accordingly, the Court denies

Defendants' motion as to Plaintiff's excessive force claim against Mole and Pugliese.

### iii. Failure to intervene

Plaintiff asserts that Ren and Genao are liable for their failure to intervene in the use of

---

[11] Seizures pursuant to New York Mental Health and Hygiene Law section 9.41 are not considered criminal arrests. *See Garcia v. Dutchess Cty.*, 43 F. Supp. 3d 281, 291 (S.D.N.Y. 2014), ("[C]onduct equivalent to mental illness [that] can result in custody" pursuant to section 9.41 "cannot be considered" a criminal "offense" (citing *Disability Advocates, Inc. v. McMahon*, 279 F. Supp. 2d 158, 165 (N.D.N.Y. 2003); and then citing *People v. Crank*, 155 Misc.2d 762, 590 N.Y.S.2d 149 (1992); and then citing N.Y. Penal Law § 10.00(1)) (*aff'd in part, dismissed in part sub nom. Garcia v. Sistarenik*, 603 F. App'x 61 (2d Cir. 2015)).

[12] Plaintiff does not dispute that Mole and Pugliese were legally permitted to remove her bag from her person so that they could search it incident to her arrest. *See Riley v. California*, --- U.S. ---, ---, 134 S.Ct. 2473 (2014); *see also United States v. Diaz*, 854 F.3d 197, 208–09 (2d Cir. 2017); *United States v. Williams*, 568 F. App'x 25, 27 (2d Cir. 2014) (noting exception for "searches incident to arrest, [which] permits the police to search a lawfully arrested person and areas within his immediate control" (quoting *Smith v. Ohio*, 494 U.S. 541, (1990) (internal quotation marks omitted))).

excessive force against Plaintiff because they were "present and within feet of the other officers when [Sergeant] Mole and Officer Pugliese took it upon themselves to try to wrest [P]laintiff's handbag from her."[13]  (Pl. Opp'n 13.)

Defendants argue that Plaintiff has not demonstrated that any Defendant had a realistic opportunity to intervene in the alleged unconstitutional conduct.  (Defs. Mem. 26.)

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases)).  "A police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so."  *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) (citing *Ricciuti*, 124 F.3d at 129).  An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it."  *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation omitted); *see also Terebesi*, 764 F.3d at 244.

Plaintiff has not presented any evidence that either Ren or Genao had an opportunity to prevent Mole or Pugliese from struggling with Plaintiff over the removal of her bag from her

---

[13]  Defendants object to Plaintiff's inclusion of a supervisory liability claim for the first time in her opposition to Defendants' motion.  (Defs. Reply n.9.)  Because this claim was not included in her Amended Complaint, and Plaintiff has not sought leave to amend, the Court will not consider the merits of Plaintiff's supervisory liability claim.  *See Lyman v. CSXTransp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (finding district court did not abuse its discretion in declining to consider claims raised for the first time in opposition); *see also Seeman v. Gracie Gardens Owners Corp.*, 794 F. Supp. 2d 476, 482 (S.D.N.Y. 2011) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims").

person. There is no indication that either Ren or Genao had an opportunity to see, much less

stop, the other officers from using force against Plaintiff in order to obtain her bag.[14] *Cf.*

*Figueroa*, 825 F.3d at 106 ("An officer may be liable for the preventable harm caused by the

officer's failure to intervene during a constitutional violation where the officer "observes the

[constitutional violation] and has sufficient time to act to prevent it."). Moreover, based on

Plaintiff's description of the incident, (Pl. Dep. 150:24–152:14; Pl. Suppl. Decl. ¶ 7), her struggle

with the officers over her bag only appears to have lasted for a matter of seconds, *see O'Neill v.*

*Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (finding no realistic opportunity to intervene when the

officer's punches occurred in rapid succession); *see also Alvarez v. City of New York*, No. 11-CV-

5464, 2015 WL 1499161, at *9 (S.D.N.Y. Mar. 30, 2015) (finding there was insufficient time to

intervene where "officers' volley of bullets lasted only seven to ten seconds"); *Sash v. United*

*States,* 674 F. Supp. 2d 531, 545 (S.D.N.Y. 2009) (finding assault that occurred in "less than

thirty seconds" did not provide officers sufficient time to intervene). Accordingly, no reasonable

juror could find that either Ren or Genao had an opportunity to intervene and the Court grants

Defendants' motion as to Plaintiff's failure to intervene claims.

### d.   State law claims

#### i.   Assault and battery

Plaintiff argues that Defendants are liable for assault and battery based on the intentional

---

[14]   Plaintiff's conclusory statement in her opposition that "[c]learly, each of these officers was present and within feet of the other officers when [Sergeant] Mole and Officer Pugliese took it upon themselves to try to wrest plaintiff's handbag from her," (Pl. Opp'n 13), is entirely unsupported by any citation to the record. In contrast, Ren and Genao deny that they were present when the other officers allegedly removed Plaintiff's bag and deny witnessing the injury to her finger. (*See* CCRB Official Statements, annexed to Hoffner Decl. as Ex. 4, Docket Entry No. 43-4.)

conduct of the four police officers.  (Pl. Opp'n 14.)  Plaintiff further contends that, to the extent

that the Court determines that she has not sufficiently identified the officer who caused her

injury, the City is liable under a theory of respondeat superior.  (*Id.*)  Defendants do not contest

the merits of Plaintiff's assault and battery claim.[15]  (Defs. Mem. 28–29.)

Under New York law, "assault is an intentional placing of another person in fear of

imminent harmful or offensive contact" and a "battery is an intentional wrongful physical contact

with another person without consent."  *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006)

(citing *Charkhy v. Altman*, 678 N.Y.S.2d 40, 41 (App. Div. 1998)); *see also United Nat'l Ins. Co.

v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993) (internal quotation marks

omitted) (citing *Hernandez v. Lattimore*, 612 F.2d 61, 67 (2d Cir. 1979)); *Rucks v. City of New

York*, 96 F. Supp. 3d 138, 153 (S.D.N.Y. 2015).  Federal excessive force claims and state

law assault and battery claims against police officers are nearly identical.  *See Humphrey v.

Landers,* 344 F. App'x 686, 688 (2d Cir. 2009) ("[E]xcept for § 1983's  requirement that the tort

be committed under color of state law, the essential elements of [excessive force and state

law assault and battery claims are] substantially identical." (alteration in original) (quoting *Posr

v. Doherty,* 944 F.2d 91, 94–95 (2d Cir. 1991))); *Garcia v. City of New York*, No. 16-CV-6903,

2018 WL 3489643, at *4 (S.D.N.Y. July 9, 2018) ("[T]he elements of a § 1983 excessive force

claim are 'substantially identical' to the elements of assault and battery claims against an officer

under New York law) (internal quotations and citations omitted)).

---

[15]  Defendants objected solely to Plaintiff's attempt to assert claims for assault and
battery based on theories of both intentional conduct and negligence.  (Defs. Mem. 28–29.)  In
her opposition, Plaintiff abandoned all claims for assault and battery premised on a theory of
negligence, (Pl. Opp'n 14), and Defendants raised no further objection to the claim in their reply
brief, (*see* Defs. Reply).

Because Plaintiff's assault and battery claims are based on the same conduct on which her excessive force claim is based, (*see* Pl. Opp'n 11–12, 14), the Court denies Defendants' motion as to this claim as to Mole and Pugliese.[16]

### ii. Negligent and intentional infliction of emotional distress

Plaintiff asserts claims of negligent and intentional infliction of emotional distress, arguing that the loss of her bag "caused her great distress." (Pl. Opp'n 15.) Defendants argue that these are "claims of last resort," which cannot co-exist with Plaintiff's claims for excessive force, assault, and battery. (Defs. Mem. 29 (citing *Saldana v. Vill. Of Port Chester*, No. 9-CV-6268, 2010 WL 6117083, at 5 (S.D.N.Y. July 21, 2010).) Defendants also argue that Plaintiff fails to provide evidence that the behavior alleged in the complaint "shocks the conscience." (Defs. Reply 10.)

Under New York law, the torts of intentional and negligent infliction of emotional distress share three common elements: (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress. *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134–35 (E.D.N.Y. 2010). A claim based on intentional infliction of emotional distress also requires that the defendant intend to cause severe emotional distress. *Id.*; *see also Bender v. City of New York*, 78 F.3d 787, 789 (2d Cir. 1996) (citing *Howell v. New York Post Co.*, 596 N.Y.S.2d 350, 353 (1993)); *Sylvester v. City of New York*, 385 F. Supp. 2d 431, 441–42 (S.D.N.Y. 2005). "New York courts have been 'very strict' in applying these elements." *Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir. 1995) (citing *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985)); *see also Conboy v. AT&T Corp.*, 241 F.3d

---

[16] Because Plaintiff is unable to show personal involvement of Genoa and Ren in the alleged facts underlying both claims, the Court dismisses Plaintiff's assault and battery claims as to Genoa and Ren here as well.

242, 258 (2d Cir. 2001) ("[T]he standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" (quoting *Howell v. N.Y. Post Co.*, 596 N.Y.S.2d 350, 353 (1993))). A defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" and is of such a nature that it is "utterly intolerable in a civilized community." *Marmelstein v. Kehillat New Hempstead*, 862 N.Y.S.2d 311, 311 (2008) (citation omitted); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 564 (S.D.N.Y. 2012) (noting that "New York sets a particularly high bar" for intentional infliction of emotional distress cases requiring "conduct that is so 'extreme and outrageous.'" (citations omitted)).

Plaintiff fails to set forth evidence that Defendants' conduct in detaining her and confiscating her bag caused her severe emotional distress. Though Plaintiff's opposition refers to "great emotional distress," there is no evidence of such distress in either of Plaintiff's affidavits, deposition testimony, or any other document in the record. Nor were the officers' actions in losing her bag "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *See Marmelstein*, 862 N.Y.S.2d at 311. Accordingly, the Court grants Defendants' motion as to Plaintiff's claims for negligent and intentional infliction of emotional distress.

### iii. Invasion of privacy

Defendants argue that Plaintiff cannot bring a claim for invasion of privacy because New York law does not recognize such a claim. Plaintiff argues — for the first time in her opposition — that her invasion of privacy claim is "both a claim for warrantless entry into her basement in violation of her [Fourth] Amendment rights, as well as a claim for the failure to safeguard her handbag." (Pl. Opp'n 15.)

"New York does not recognize a common-law right to privacy." *Edme v. Internet Brands, Inc.*, 968 F. Supp. 2d 519, 527 (E.D.N.Y. 2013) (citing *Messenger v. Gruner + Jahr Printing & Publ'g*, 706 N.Y.S.2d 52 (2000)). Invasion of privacy claims are governed by Civil Rights Law Section 50–51, which forbids the "use [ ] for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person . . . ." N.Y. Civ. Rights Law § 50.

Plaintiff does not allege any use of her name, portrait, or picture for advertising purposes. Furthermore, having failed to include a "warrantless entry" claim in the Amended Complaint, the Court declines to construe this claim as a constitutional claim pursuant to section 1983. *See Lyman v. CSXTransp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (finding district court did not abuse its discretion in declining to consider claims raised for the first time in opposition).

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment in part and denies it in part. The Court grants the motion as to Plaintiff's (1) false arrest claim; (2) excessive force claims against Genao and Ren; (3) failure to intervene claims; (4) negligent and intentional infliction of emotional distress claims; and (5) invasion of privacy claims. The Court denies the motion as to Plaintiff's (1) excessive force claim against Mole and Pugliese; and (2) assault and battery claims against Mole and Pugliese. Because Plaintiff has no remaining claims against the City of New York, Genao, and Ren, the Court dismisses those parties from the action. The Clerk of Court is directed to amend the docket accordingly.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 22, 2018
      Brooklyn, New York